IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HARRIET G. ABRUSCATO and JOSEPH
ABRUSCATO, on behalf of Plaintiffs and
a class,

        Plaintiffs,

v.

WELLS FARGO BANK, N.A., d/b/a
WELLS FARGO HOME MORTGAGE
and FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

        Defendants.

No. 21-cv-00012
Judge Franklin U. Valderrama

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Harriet G. Abruscato and Joseph Abruscato (the Abruscatos) obtained a mortgage loan, which was assigned to defendant Federal National Mortgage Association (Fannie Mae) and serviced by defendant Wells Fargo Bank (Wells Fargo) (collectively, Defendants). R. 1, Compl.[1] After paying off the mortgage in full, the Abruscatos sent Wells Fargo a letter requesting cancellation of their private mortgage insurance (PMI) and a refund of any unearned premiums. Wells Fargo responded that the PMI policy was nonrefundable and refused to refund any premiums. *Id.* The Abruscatos consequently filed suit, individually and on behalf of

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

a similarly situated class,[2] alleging that Defendants' refusal to refund the unpaid PMI premiums constituted a violation of the federal Homeowners Protection Act (the HPA), 12 U.S.C. §§ 4901 *et seq.* (Count I), a breach of contract (Count II), and a violation of the Illinois Consumer Fraud Act (the ICFA), 815 ILCS 505/2 (Count III). Defendants now move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 16, Mot. Dismiss. For the reasons that follow, Defendants' motion is granted in part and denied in part.

## Background

In July 2019, the Abruscatos obtained a mortgage loan secured by their residence from CrossCountry Mortgage, Inc. (CrossCountry). Compl. ¶ 7.[3] CrossCountry required the Abruscatos to purchase PMI, so the Abruscatos contracted to pay PMI. *Id.* ¶¶ 8–9. The Abruscatos paid the entire premium for the PMI up front, at the time of closing. *Id.* ¶ 10. The Abruscatos also signed a "Private Mortgage Insurance Disclosure Fixed Rate Mortgage," which stated that "You have the right to request that PMI be cancelled on or after the following dates: . . . The date the principal balance actually reaches 80% of the original value of the property." *Id.* ¶ 11

---

[2] The class consists of "all persons (a) whose loans were serviced by Wells Fargo Bank, N.A, (b) who paid single premium borrower paid private mortgage insurance ("PMI"), (c) which Wells Fargo Bank, N.A., refused to cancel and make a refund of unearned premiums (d) because the borrower voluntarily paid the balance to below 80% of the original property value (including payment in full) (e) on or after a date two years prior to the filing of this action." Compl. ¶ 35. The subclass consists of members whose loans were owned by Fannie Mae. *Id.* ¶ 36.

[3] The Court accepts as true all of the well-pleaded facts in the Complaint and draws all reasonable inferences in favor of the Abruscatos. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

(quoting R. 1-1, PMI Disclosure). The Abruscatos' loan was assigned to Fannie Mae, and the servicing of the loan was assigned to Wells Fargo. *Id.* ¶ 14.

On October 21, 2020, the Abruscatos paid their mortgage loan in full. Compl. ¶ 16. As a result of this payment, along with their prior payments, the Abruscatos' principal balance reached $0.00, an amount less than 80% of the original value of the property. *Id.* ¶ 17. On October 23, 2020, the Abruscatos sent a letter to Wells Fargo requesting the cancellation of PMI and a refund of premiums. *Id.* ¶ 18. Wells Fargo refused, claiming that a request for cancellation must be made before the loan is paid in full. *Id.* ¶ 25.

The Abruscatos subsequently initiated this lawsuit, individually and on behalf of a class, alleging that Defendants' refusal to refund the premiums: violates the HPA (Count I), constitutes a breach of contract (Count II), and violates the ICFA (Count III).

Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). Mot. Dismiss; R. 17, Memo. Dismiss.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on

its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### Analysis

Each claim of the Complaint involves a central allegation—that Defendants violated the HPA when Wells Fargo refused to refund any unearned PMI premiums to the Abruscatos, instead insisting that a request for cancellation had to be made before the mortgage loan was paid off in full.

The HPA was enacted in 1998 to "establish Federal guidelines for disclosure and termination of private mortgage insurance (PMI)." *Fellows v. CitiMortgage, Inc.*, 710 F. Supp. 2d 385, 396 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting H.R. Rep. No. 105-55, at 4 (1997)). The HPA requires the servicer of a mortgage to return all unearned PMI premiums "[n]ot later than 45 days after the *termination or cancellation* of a private mortgage insurance requirement under this section." 12 U.S.C. § 4902(f)(1) (emphasis added). The HPA further provides that "[a]ny servicer, mortgagee, or mortgage insurer that violates a provision of this chapter shall be liable to each mortgagor to whom the violation relates for . . . ." 12 U.S.C. § 4907(a).

4

Defendants argue that the Court should dismiss the Complaint for at least two reasons. First, Defendants contend that the Abruscatos fail to allege a violation of the HPA (Count I). Memo. Dismiss at 3–7. Second, Defendants assert that the Abruscatos' breach of contract claim (Count II) and ICFA claim (Count III) are preempted by the HPA. *Id.* at 7–10. The Court addresses each of these arguments in turn.[4]

## I. The Abruscatos' HPA Claim (Count I)

The Abruscatos allege in Count I that the Defendants violated the HPA by not refunding PMI premiums after their mortgage was paid off, despite the Abruscatos' request for PMI cancellation and refund at a time when the principal balance was less than 80% of the original property value. Compl. ¶ 33. In Count II, the Abruscatos assert a breach of contract claim based on Defendants' purported violation of the HPA, which was allegedly incorporated by the mortgage. *Id.* ¶ 43. And in Count III, the Abruscatos allege that Defendants engaged in unfair acts and practices in violation of the ICFA by failing to comply with the HPA and by refusing to refund unearned insurance premiums. *Id.* ¶ 55. Defendants contend that all three claims fail because the HPA applies only "where the principal balance on an active loan has been reduced to a specified level—not where a loan has been paid off." Memo. Dismiss at 3–4.

---

[4]Defendants also argue that the Abruscatos' ICFA claim fails as a matter of law because it is merely a repackaging of the breach of contract claims. Memo. Dismiss at 10–11. However, because the Court agrees with Defendants that the Abruscatos' ICFA claim is preempted by the HPA, as discussed further below, the Court need not address Defendants' third argument that the Abruscatos fail to state a claim under the ICFA.

In support of their construction of the HPA, Defendants direct the Court to the HPA itself, arguing that the HPA only calls for the refund of unearned premiums when PMI is terminated or cancelled *pursuant to Section 4902 itself*. Memo. Dismiss at 3–5 (emphasis added). To that end, Defendants emphasize that the HPA's "[r]eturn of unearned premiums" provision, 12 U.S.C. § 4902(f)(1), states that the return of unearned premiums occurs no later than 45 days after "the termination or cancellation of a private mortgage insurance requirement *under this section* . . . ." Memo. Dismiss at 4 (emphasis in original) (citation omitted). Defendants maintain that the Abruscatos' PMI requirement was extinguished the moment they paid off their mortgage, so a termination or cancellation pursuant to Section 4902 did not occur. *Id.*

Defendants' argument presents an apparent case of first impression,[5] which turns on statutory interpretation—whether the HPA applies to PMI reimbursements for borrowers who have paid off their mortgages in full. Resolving Defendants' motion requires interpretation of the HPA.

"Statutory construction . . . is a holistic endeavor." *United Sav. Ass'n of Tex. v. Timers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). When interpreting a statute, courts begin with the language of the statute, giving the words used their ordinary meaning. *See Artis v. District of Columbia*, --- U.S. ----, 138 S. Ct. 594, 603 (2018) (citation omitted); *Schneider Nat'l Leasing, Inc. v. United States*, 11 F.4th 548,

---

[5]At the hearing on Defendants' motion (the Hearing), R. 42, both parties represented that the applicability of the HPA to paid-off mortgages appears to be an issue of first impression. Those representations align with the Court's understanding.

554, 559 (7th Cir. 2021) (citations omitted). When a construing court finds that the language in a statute is unambiguous, the court will not "conduct further inquiry into its meaning and [will] enforce the statute in accordance with its plain meaning." *River Rd. Hotel Partners, LLC v. Amalgamated Bank*, 651 F.3d 642, 649 (7th Cir. 2011), *aff'd sub nom. RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012) (citations omitted).[6]

Here, the Court finds that the plain language of the HPA provides for cancellation of a PMI requirement at any time, so long as the four requirements of 12 U.S.C. § 4902(a) are satisfied. Specifically, the "Borrower cancellation" subsection provides that "[a] requirement for private mortgage insurance in connection with a residential mortgage transaction shall be canceled on the cancellation date *or any later date that the mortgagor fulfills*" four requirements. 12 U.S.C. § 4902(a) (emphasis added). Those requirements are satisfied if the mortgagor: "(1) submits a request in writing to the servicer that cancellation be initiated; (2) has a good payment history with respect to the residential mortgage; (3) is current on the payments required by the terms of the residential mortgage transaction; and (4) has satisfied any requirement of the holder of the mortgage (as of the date of a request under paragraph (1)) for" certain evidence and certification. *Id.* § 4902(a)(1)–(4).

---

[6]Although the Abruscatos cite to legislative history in support of their response, *see* R. 19, Resp. at 4–5, both parties stated at the Hearing that the HPA is unambiguous. The Court agrees, so it does not rely on legislative history in support of its holding. *See River Rd. Hotel Partners*, 651 F.3d at 649 ("If we find that the language in a statute is unambiguous, we will not conduct further inquiry into its meaning and enforce the statute in accordance with its plain meaning.")

The Abruscatos contend, *see* Resp. at 5–6, they have pled the necessary elements under paragraphs (1) through (4) of the Borrower cancellation provision. The Court agrees. According to the Complaint, the Abruscatos: (1) submitted their cancellation request in writing, Compl. ¶ 18; (2) had a good payment history, *id.* ¶ 22; and (3) were current on the payments required by the mortgage, *id.* The Abruscatos additionally aver that the fourth requirement was satisfied, because the holder of the mortgage would not require evidence that the value of the property securing the mortgage had not declined below the original value of the property where the loan had been paid down to zero or almost zero. Resp. at 6; *see* 12 U.S.C. § 4902(a)(4).[7] Consequently, because the Abruscatos have pled that they satisfied those four requirements on the "later date" of October 23, 2020, they have stated a claim under the plain language of the HPA.

Defendants offer two primary arguments attacking the applicability of the HPA to paid-off mortgages, neither of which persuades the Court.

## A. Extinguishment of Underlying Debt Obligation

First, Defendants cite *Roswell Cap. Partners LLC v. Beshara*, 436 F. App'x 34, 35 (2d Cir. 2011), for the proposition that "[f]ull payment on a promissory note necessarily extinguishes the underlying debt obligation." Memo. Dismiss at 5.

The Court finds *Roswell* unavailing. As an initial matter, *Roswell* is an unpublished summary order from the Second Circuit, so it has no precedential effect

---

[7]Defendants do not argue that the Abruscatos failed to meet any of the four conditions. Instead, as discussed further below, Defendants maintain that the language of the four conditions in the statute contemplates an ongoing borrower-lender relationship.

on this Court (nor, for that matter, district courts within the Second Circuit). *See King Cty., Wash. v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 317, 323 (S.D.N.Y. 2012) (citing *Williams v. City of New York*, 2007 WL 2214390, at *12 n.178 (S.D.N.Y. July 26, 2007)) (summary order from Second Circuit could not serve as basis for reconsideration because it "does not have precedential effect"); 2d Cir. L.R. 32.1.1(a) ("Rulings by summary order do not have precedential effect."). More importantly, *Roswell* did not involve the HPA or even a mortgage. Rather, in *Roswell*, the defendant claimed that it held a security interest in the collateral of a promissory note that had been converted to equity shares. 436 Fed. App'x at 35. The district court in *Roswell* granted summary judgment against the defendant, holding that the equity conversion had extinguished the defendant's security interest in the collateral. *Id.* The Second Circuit affirmed, finding that the conversion of debt to shares amounted to a payment in full on the debt, and that "[f]ull payment on a promissory note necessarily extinguishes the underlying debt obligation." *Id.* (citing *Bank of Lexington v. Jack Adams Aircraft Sales, Inc.*, 570 F.2d 1220, 1225 (5th Cir.1978)). Defendants have not explained how *Roswell's* holding that a security interest was extinguished by the conversion of a promissory note into equity shares shows that a PMI requirement is extinguished by the payment of a mortgage loan. Defendants concede, as they must, that PMI "is not a security interest or collateral, nor are PMI premiums held by the lender. Rather, PMI is an insurance contract . . . ." R. 21, Reply at 2. The Court therefore finds the *Roswell* summary order of no utility in determining the applicability of the HPA to paid-off mortgages.

While at first blush, Defendants' general assertion that there would be no PMI requirement for the Abruscatos to cancel once the mortgage had been paid in full may appear logical, Defendants have failed to support that contention with any authority. *See Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021) (movant has burden to establish entitlement to relief in a motion to dismiss for failure to state a claim). Defendants' interpretation of the HPA engrafts a temporal component when the plain language of the HPA does not place any temporal limitation on the borrower cancellation of PMI. Had Congress intended to limit refund of unearned PMI to active mortgages, Congress knew how to say so. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (citations omitted) ("[C]ourts must presume that a legislature says in statute what it means and means in a statute what it says there."). The Court will not adopt such an interpretation of the HPA, absent clear Congressional intent to do so. *See Mosley v. City of Chicago*, 252 F.R.D. 445, 449 (N.D. Ill. 2008) (citing *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 897 (7th Cir.1996)) ("It is one thing to interpret statutory language 'narrowly' or 'broadly.' It is quite another thing to rewrite a statute to include language Congress chose to exclude.").

## B. Ongoing Borrower-Lender Relationship

Defendants' second argument falls short for similar reasons. Defendants invite the Court to interpret the HPA as requiring an ongoing borrower-lender relationship, Memo. Dismiss at 5–7, but the HPA expresses no such limitation.

According to Defendants, the three substantive requirements of borrower cancellation, i.e., that the borrower "has a good payment history," "is current on the

payments required," and has satisfied any requirements to show the property is still worth at least its original value and/or that the borrower's equity is not encumbered by some subordinate lien contemplate an ongoing borrower-lender relationship. Memo. Dismiss at 5–6 (citing 12 U.S.C. § 4902(a)(2)–(4)). Defendants posit that none of those requirements would make sense if the HPA were intended to apply where a loan was paid off in full before a borrower requested a PMI cancellation. *Id.*

### 1. Good Payment History Requirement

In support of their reading of the HPA, Defendants direct the Court to the requirement of a "good payment history" under 12 U.S.C. § 4902(a)(2). Memo. Dismiss at 6. The Defendants contend that because the HPA's definition of "good payment history," *see* 12 U.S.C. § 4901(4), looks back to the timeliness of payments over the prior two years, that the requirement "makes sense only in the context of an ongoing borrower-lender relationship, as a measure of the likelihood of future default." *Id.* at 6. But the HPA's definition of "good payment history" says nothing about the likelihood of default; nor does the HPA limit the looking-back period to times of active payment. Even after the Abruscatos had paid off their mortgage in full, they still satisfied the HPA's definition of "good payment history" because they had never made a payment that was over 30 days or 60 days overdue. Compl. ¶ 22.

Even if the Abruscatos had made a late payment, the "good payment history" looking back period is either (for a 60-days-plus overdue payment), "the 12-month period beginning 24 months before the *later of* (i) the date on which the mortgage reaches the cancellation date, or (ii) the date that the mortgagor submits a request

for cancellation under section 4902(a)(1) of this title," or (for a 30-days-plus overdue payment), "the 12-month period preceding the *later of* (i) the date on which the mortgage reaches the cancellation date, or (ii) the date that the mortgagor submits a request for cancellation under section 4902(a)(1) of this title." 12 U.S.C. § 4901(4) (emphases added). As a result, a mortgagor has "good payment history," so long as a mortgagor has not made a late payment in the months leading up to the borrower's cancellation, or in the months leading up to the date the PMI is set to automatically cancel, whichever period is later. Because the statute sets this looking back period to the later of those two options—the months preceding borrower cancellation under Section 4902(a)(1) or the months preceding the automatic date of cancellation under Section 4901(2)—the HPA contemplates that the looking back period could cover times where no payments were being made. For instance, even if the Abruscatos had only paid off 99% of their mortgage in October 2021, and then written a request for cancellation before paying off the mortgage in full, the looking back period would still be the months preceding July 1, 2027, as that date comes after October 2021 and is the date "the principal balance of [the] loan is first scheduled to reach 80% of the original value of the property." PMI Disclosure. Therefore, Defendants' "good payment history" argument does not demonstrate that the HPA does not apply to paid-off mortgages.

## 2. Requirements that Borrower be Current on Payments and Provide Evidence Regarding Property Value or Encumbrance

Defendants next highlight the "current on payments" and value/encumbrance evidence requirements of borrower cancellation under 12 U.S.C. § 4902(a). Memo.

Dismiss at 6–7. Defendants argue that these provisions would make no sense where a mortgage had been paid off, for there would be no payments to be current on, and no need to "hinge PMI termination upon whether the property's value has decreased, or whether some subordinate lien encumbers the mortgagor's equity." *Id*. Yet, it cannot be the case that the Abruscatos, who have paid off their mortgage in full, ahead of schedule, would be considered *not current* on their payments. Defendants' argument with respect to the fourth requirement is even less convincing because that requirement is essentially optional; it only applies when the holder of the mortgage requires certain evidence about the value of the property or the absence of a subordinate lien on the equity of the mortgagor. 12 U.S.C. § 4902(a)(4). Accordingly, the fact that this optional requirement would not be needed for a paid-off mortgage does not convince the Court that the HPA contemplates only mortgages with an ongoing borrower-lender relationship.

All in all, under Defendants' view of the statute, homeowners who are able to pay off their entire mortgage ahead of schedule would be punished for doing so. Put differently, homeowners who are able to pay off the remainder of their mortgage in one fell swoop forfeit their Congress-provided right to PMI cancellation and refunds under the HPA. Under the Defendants' reading of the HPA, a homeowner who wanted to pay her mortgage off in full, ahead of schedule, would have to stop short of paying off the entire mortgage (she could pay 99% of the balance), write a letter to the bank to cancel PMI, and then pay off the remaining amount (a separate payment of the remaining 1%), or be out thousands of dollars in PMI refunds. The Court declines to

read the language of the HPA in a way that leads to such an absurd result. *See United States v. Vallery*, 437 F.3d 626, 630 (7th Cir. 2006) (citations omitted) ("When interpreting statutes, first and foremost, we give words their plain meaning unless doing so would frustrate the overall purpose of the statutory scheme, lead to absurd results, or contravene clearly expressed legislative intent.").

In conclusion, the Court finds, in viewing the allegations of the complaint in the light most favorable to the Abruscatos, that the Abruscatos plausibly allege a violation of the HPA. Accordingly, Defendants' motion to dismiss Count I is denied.

## II. Preemption of State Law Claims (Counts II and III)

The Abruscatos assert two state law claims: a common-law breach of contract action (Count II) and a violation of the ICFA (Count III). Defendants move to dismiss Counts II and III on the basis that they are preempted by the HPA.

The Supremacy Clause of the U.S. Constitution provides that the Constitution and laws of the United States shall be the "supreme Law of the Land." U.S. Const. art. VI, cl.2. The Supremacy clause "invalidates state laws that interfere with, or are contrary to federal law." *Nelson v. Great Lakes Educ. Loan Servs.*, 928 F.3d 639, 646 (7th Cir. 2019) (quoting *Hillsborough County v. Automated Medical Labs., Inc.*, 471 U.S. 707, 712–713 (1985)). There are three types of preemption: express, field and conflict. *Id*. Express preemption exists when Congress "clearly declares its intention to preempt state law." *Id*. (citing *Mason v. SmithKline Beecham Corp.*, 596 F.3d 387, 390 (7th Cir. 2010)). Field preemption occurs when "federal law so thoroughly occupies a legislative field as to make it reasonable to infer that Congress left no room for the states to act." *Id*. at 647 (internal quotation marks and citations omitted).

Conflict preemption is found where there is an "actual conflict between state and federal law such that it is impossible for a person to obey both, or when state law stands as an obstacle to fully accomplishing the objectives of Congress." *Id.* at 646–47 (citations omitted).

> The HPA contains a preemption clause, which states:
>
> With respect to any residential mortgage or residential mortgage transaction consummated after the effective date of this chapter . . . the provisions of this chapter shall supersede any provisions of the law of any State relating to requirements for obtaining or maintaining private mortgage insurance in connection with residential mortgage transactions, cancellation or automatic termination of such private mortgage insurance, any disclosure of information addressed by this chapter, and any other matter specifically addressed by this chapter.

12 U.S.C. § 4908(a)(1).[8] Some federal courts have interpreted this clause as an express preemption clause, which expressly preempts certain state law claims. *See, e.g., Ciolino v. Seterus, Inc.*, 202 F. Supp. 3d 841, 844 (N.D. Ill. 2016) (state laws "relating to" the HPA's requirements are expressly preempted by the HPA); *Augustson v. Bank of Am., N.A.*, 864 F. Supp. 2d 422, 437 (E.D.N.C. 2012) (holding mortgagors' fraud, negligent misrepresentation, and unjust enrichment claims were expressly preempted by the HPA). *See also Gregor v. Aurora Bank FSB*, 26 F. Supp. 3d 146, 154 (D.R.I. 2014) (citing *Augustson* with approval and holding that the

---

[8]Section 4908 of the HPA also carves out certain state laws from preemption, but those laws are not at issue in this case. 12 U.S.C. § 4908(a)(2). The Abruscatos confusingly mention the Section 4908 carveout and insist that the ICFA was enacted prior to 1998. *See* Resp. at 10. However, because the Abruscatos fail to develop this argument further, the Court does not consider it. *Lee v. Chi. Youth Centers*, 69 F. Supp. 3d 885, 889 (N.D. Ill. 2014) (collecting cases) (undeveloped, unsupported, perfunctory, or skeletal arguments in briefs supporting or objecting to motions are waived).

plaintiffs' claims for fraudulent concealment and unjust enrichment were preempted by the HPA).

For example, in *Ciolino*, the plaintiff alleged that his mortgage servicer failed to terminate his PMI by a specific date in violation of the HPA. 202 F. Supp. 3d at 842. The plaintiff in *Ciolino* also brought state law breach of contract and ICFA claims. *Id.* The defendant moved to dismiss the state law claims on the basis that those claims were preempted by the HPA. *Id.* The court, in a case of first impression in this Circuit, held that the HPA expressly preempted plaintiff's state law claims.

The court began its analysis in *Ciolino* by finding that Section 4902(a)(1) of the HPA constituted an express preemption clause. 202 F. Supp. 3d at 844. Next, the court observed that the numerous other district courts that had considered the issue had concluded that the HPA preempts the types of state law claims advanced in *Ciolino*. *Id.* at 844–45 (collecting cases). While the *Ciolino* court acknowledged that other district courts had reached the opposite conclusion, it found, upon examining those cases, that "those courts found that the HPA did not preempt the state law claims at issue based on particular facts specific to those cases." *Id.* at 846 (citations omitted). The court next looked to other federal statutes with similar preemption language for guidance, such as the Employee Retirement Income Security Act (ERISA) and the Airline Deregulation Act. *Id.* at 846–47. The court observed that in the ERISA context, the Supreme Court has determined that a state law that "relates to" an employee benefit plan is preempted by ERISA. *Id.* at 846. The court in *Ciolino* found the phrase "relating to" as indicative of the "expansiveness of its preemptive

16

reach and Congress' goal of national uniformity." *Id.* at 847 (citing *Fellows v. CitiMortgage, Inc.*, 710 F. Supp. 2d 385, 401 (S.D.N.Y. 2010)). Applying that framework, the court held that the HPA preempts any state law claims that "relate to" the HPA's requirements.

Turning to the plaintiff's breach of contract and ICFA claims, the court in *Ciolino* found that each of the plaintiff's state law claims related to the HPA. 202 F. Supp. 3d at 847. With respect to the plaintiff's breach of contract claim, the plaintiff had alleged that the defendant breached the parties' agreement by violating the plaintiff's rights under the HPA, which had been incorporated by a disclosure form. *Id.* The plaintiff's ICFA claim was that the defendant "violated the ICFA by 'failing to comply with the HPA' and by failing to follow the procedures relating to PMI that the HPA requires." *Id.* (citation omitted). The court in *Ciolino* reasoned that because the violation of the HPA was a "necessary condition" to the plaintiff's state law claims, the plaintiff could not "plausibly contend that [the] claims do not 'relate to' the HPA's requirements." *Id.* The court concluded that the plaintiff's ICFA and breach of contract claims were expressly preempted by the HPA. *Id.* at 850.

The Court finds that the Abruscatos' state law claims are expressly preempted by the HPA for the same reasons the court found express preemption in *Ciolino*. That is, the Court agrees with the *Ciolino* court's well-reasoned finding that the HPA contains an express preemption clause which preempts state law claims relating to the HPA's requirements. The Court further finds, for the reasons discussed below,

that the Abruscatos' state law claims, like the plaintiff's claims in *Ciolino*, are related to the HPA's requirements.

### A. Preemption of Breach of Contract Claim (Count II)

In their breach of contract claim, the Abruscatos contend that Defendants breached the contracts of the Abruscatos and the class members, which incorporated the rights provided by the HPA, by "refusing to refund unearned PMI premiums after loans were paid off." Compl. ¶¶ 43, 45. Accordingly, the violation of the HPA is a necessary condition to the Abruscatos' breach of contract claim, as the only requirement to "refund unearned PMI premiums" comes from the HPA. Thus, the Court finds that the breach of contract claim, like the one in *Ciolino*, is expressly preempted by the HPA because the success of the breach of contract claim depends on a finding that the HPA was violated. *See Ciolino*, 202 F. Supp. 3d at 847–48.

The Abruscatos argue that their loan documents with Defendants, independent of the HPA, provide the right to cancel PMI, Resp. at 6, but the Abruscatos fail to direct the Court to any provision of any document making up the parties' agreements (other than the HPA), which would provide the right to the *refund of unearned PMI premiums*. Rather, the Abruscatos rely on their interpretations of omissions and unrelated provisions to insist that the documents independently provide for the refund of PMI premiums. For instance, the Abruscatos emphasize an omission in the PMI disclosure: "[i]t does not state that PMI is non-refundable under *any* circumstances." Resp. at 6 (emphasis in original). Similarly, the Abruscatos assert that because the mortgage distinguishes between mortgage

insurance and a non-refundable loss reserve in lieu of mortgage insurance, that the mortgage provides that mortgage insurance is refundable. *Id.* However, the Abruscatos' reading of an omission in the PMI disclosure and of a mortgage provision regarding non-refundable loss reserve does not convince the Court that the documents independently provide for the refund of PMI premiums. The Court agrees with Defendants that the PMI disclosure and mortgage "contain no provisions regarding refunds of unearned PMI premiums," so the Abruscatos' claims "necessarily rest upon the HPA refund rights they allege were incorporated into their contract." Reply at 3.

The Abruscatos also assert that their contract claim cannot be preempted by the HPA in light of 12 U.S.C. § 4910 (Resp. at 6–7), which states, in relevant part:

> **No preclusion of cancellation or termination agreements**
> Nothing in this chapter shall be construed to preclude cancellation or termination, by agreement between a mortgagor and the holder of the mortgage, of a requirement for private mortgage insurance in connection with a residential mortgage transaction before the cancellation or termination date established by this chapter for the mortgage.

12 U.S.C. § 4910(b). However, that language does not prohibit the preemption of the Abruscatos' state law breach of contract claim. Instead, Section 4910(b) simply prohibits construing HPA in such a way that parties could not cancel or terminate PMI by their own agreement "before the cancellation or termination date established by" the HPA. *Id.* The Abruscatos' Section 4910 argument thus misses the mark.

In sum, because the Abruscatos' breach of contract claim relates to the HPA requirements—indeed the violation of the HPA is a "necessary condition" to the

Abruscatos' breach of contract claim, *see Ciolino*, 202 F. Supp. 3d at 847—the Court finds that Count II is expressly preempted by the HPA.

### B. Preemption of ICFA Claim (Count III)

The Abruscatos' ICFA claim alleges that Defendants "engaged in unfair acts and practices, in violation of 815 ILCS 505/2, by failing to comply with the Homeowners[] Protection Act and by refusing to refund unearned insurance premiums." Compl. ¶ 55. That allegation is nearly indistinguishable from the allegation relating to the HPA violation itself, which states: "[b]ecause Defendant Wells Fargo Bank refused to cancel PMI and refund unearned premiums despite a request having been made after the loan balance was less than 80% of the original property value, it violated the Homeowners Protection Act." *Id.* ¶ 33. As was the case in *Ciolino*, the Abruscatos' ICFA claim "is based on the same conduct as [their] HPA claim . . . ." 202 F. Supp. 3d at 848. If allowed to proceed, such claims "would provide Illinois plaintiffs an alternative mechanism to enforce their HPA rights, thereby frustrating Congress' goal of uniformity." *Id.* The Court accordingly concludes that the Abruscatos' ICFA claim is expressly preempted by the HPA, for the same reasons the court found in *Ciolino*.

The Abruscatos insist that the *Ciolino* holding does not lead to a conclusion that their ICFA claim is preempted, for two reasons. First, the Abruscatos argue that *Ciolino* misreads the HPA as providing for field preemption. Resp. at 10. Second, the Abruscatos contend that the *Ciolino* court improperly found that "the fact that a state

claim provided additional remedies for conduct violative of federal law militated in favor of preemption." *Id.*

The Court finds that the Abruscatos misread the *Ciolino* decision on both fronts. First, the Abruscatos characterize the type of preemption at issue in *Ciolino* as field preemption. Yet, the *Ciolino* court very clearly stated that the preemption at issue in that case was express preemption, *see* 202 F. Supp. 3d at 844, 847, so all of the Abruscatos' contentions regarding field preemption are off point. Second, the court in *Ciolino* never held that the fact that a state law provides additional remedies for conduct violative of federal law weighs in favor of finding preemption. Rather, the plaintiff in *Ciolino* had cited several cases for the proposition that "state law claims that do not impose additional obligations, but only add additional remedies for conduct prohibited under federal law, are not preempted." *Id.* at 849 (citations omitted). The court reviewed those cases and found that they were inapplicable to the plaintiff's claims because the cited cases "involve statutory schemes and preemption provisions that are completely distinct from the one at issue in the HPA context . . . ." *Id.* at 849–50. Therefore, the Abruscatos' arguments do not deter the Court from following the *Ciolino* court's reasoning.

Even if the Abruscatos had not misread the *Ciolino* decision, their competing authority falls short. For example, the Abruscatos rely on an out-of-district case, *Scott v. GMAC Mortg., LLC*, 2010 WL 3340518 (W.D. Va. Aug. 25, 2010), to support their argument against preemption. Resp. at 11–12. In *Scott*, the plaintiffs brought claims of violation of the HPA, common law actual fraud, and common law

constructive fraud. 2010 WL 3340518, at *2. According to the plaintiffs' fraud theories, the defendant had misrepresented that mortgage insurance would not encumber the loan provided. *Id.* at *1. The defendant argued that the HPA preempted the plaintiffs' common law fraud claim. *Id.* at *3. The court disagreed, finding that the HPA does not preempt common law state fraud claims that do not directly relate to the requirements of the HPA. *Id.* at *5. The court explained that the plaintiffs' fraud claims did not directly relate to the disclosure requirements enumerated in the HPA. *Id.* The court further reasoned that different evidence was required to prove the plaintiffs' HPA claim and the plaintiffs' general fraud claims: "The HPA claims depend on evidence of failure to disclose. The fraud claims depend on evidence of an affirmative misrepresentation of material fact." *Id.* By contrast, here, the Abruscatos' ICFA claim directly relates to the requirements of the HPA, and both claims require the same evidence—evidence that shows that Defendants improperly refused to provide PMI premium refunds after the Abruscatos sent their cancellation letter. The Court therefore finds the *Scott* holding inapposite.

Along similar lines, the Court is unpersuaded by the Abruscatos' reliance on *In re Ocwen*, 491 F.3d 638 (7th Cir. 2007). Resp. at 12. The Abruscatos cite *Ocwen* in support of their argument that "state laws that do not impose additional obligations but only provide additional remedies for conduct prohibited under federal law, are not preempted . . . ." *Id.* Yet, *Ocwen* dealt with a distinct preemption clause from a regulation in connection with the Home Owners' Loan Act (HOLA), 12 U.S.C. §§ 1461 *et seq.* 491 F.3d at 641–42. In *Ocwen*, the federal statutory preemption clause at issue

specifically carved out state "[c]ontract and commercial law" to the extent that those laws "only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section." *Id.* at 642 (quoting 12 C.F.R. § 560.2(c)). The regulation at issue in *Ocwen* further, unlike the HPA, created no private right to sue to enforce the provisions of the HOLA or the regulation. *Id.* at 643. Because the Abruscatos fail to explain how the statutory scheme at issue there is analogous to the HPA, their reliance on *Ocwen* is misplaced.

Bringing it all together, the Abruscatos' state law claims of breach of contract and violation of the ICFA are expressly preempted by the HPA because they directly relate to the HPA's requirements and depend on Defendants' purported violation of the HPA. The Court therefore grants Defendants' motion to dismiss Counts II and III of the Complaint.

## Conclusion

For the reasons above, Defendants' motion to dismiss [16] is granted in part and denied in part. The motion to dismiss is denied with respect to Count I. The motion to dismiss is granted with respect to Counts II and III. The dismissal of Counts II and III is with prejudice because they are preempted by the HPA. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015) (citations omitted) (claims may be dismissed with prejudice "[w]here it is clear that the defect cannot be corrected so that amendment is futile"); *Hughes v. Sw. Airlines Co.*, 2019 WL 1375927, at *1 (N.D. Ill. Mar. 26, 2019) ("[B]ecause the

ADA clearly preempts his negligence claim and amendment would be futile, the Court

dismisses Hughes' negligence claim with prejudice.").


Dated: March 16, 2022

Franklin U. Valderrama
United States District Judge